## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY M. AMATO, individually, and both )
GARY M. AMATO and QIN Y. AMATO as )
the Parents and Natural Guardians of )
MELISSA AMATO and BRYCE AMATO, )
both minors, )
                                  )
          Plaintiffs, )
                                  )
          v. )     2:20-cv-00684
                                  )
AAA INTERINSURANCE EXCHANGE )
OF THE AUTOMOBILE CLUB; )
INTERINSURANCE EXCHANGE OF THE )
AUTOMOBILE CLUB; and AAA AUTO )
CLUB INSURANCE, )
                                  )
          Defendants. )

### OPINION

**Mark R. Hornak, Chief United States District Judge**

       Now before the Court is Defendants' Motion to Dismiss brought for both lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 10.) For the reasons set forth in this Opinion, the Court grants Defendants' Motion and dismisses this action without prejudice as Plaintiffs have not established the requirements for diversity jurisdiction, 28 U.S.C. § 1332. Accordingly, the Court does not address whether Plaintiffs have adequately stated a claim so as to avoid dismissal pursuant to Rule 12(b)(6).

### I.    BACKGROUND

       Plaintiffs are Gary M. Amato, proceeding individually, as well as Gary M. Amato and Qin Y. Amato (husband and wife), proceeding as the parents and natural guardians of Melissa and Bryce Amato (minors). (ECF No. 1.) Plaintiffs' Complaint names the following insurance entities

1

as Defendants: AAA Interinsurance Exchange of the Automobile Club, Interinsurance Exchange of the Automobile Club, and AAA Auto Club Insurance. Defendants contest the inclusion of "AAA Interinsurance Exchange of the Automobile Club" and "AAA Auto Club Insurance" as named parties in this suit because neither are "legal entities that issued the insurance policy in question." (ECF No. 10.) Based on the Court's consideration of the record presently before it, the Court concludes that "Interinsurance Exchange of the Automobile Club" (Defendant or "AAA") is the only properly named Defendant in this action as it is the legal entity that issued Plaintiffs' insurance policy.[1] The facts set out below are drawn from the Complaint and other materials which the Court may properly consider.

On May 27, 2018, Mr. Amato and his two (2) children were traveling west by car on Route 286 in Westmoreland County. (ECF No. 1.) As Mr. Amato approached an intersection, an alleged "'phantom vehicle' . . . traveling approximately east on Route 286," unexpectedly swerved into Mr. Amato's lane. (*Id.*) As a result, Mr. Amato's "Forward Collision Alert and Collision Mitigation Braking System" was triggered, causing his vehicle to abruptly halt. (*Id.*) Due to that alleged abrupt and "violent" halt, Mr. Amato avers that he and his two (2) children suffered serious injuries. (*Id.*) At the time of the accident, Mr. Amato was the "named insured" of an auto insurance policy ("the policy") issued by Defendant. (ECF Nos. 1 and 1-2.) Mr. Amato's children were also covered by the policy as "resident relatives" and passengers in the vehicle at the time of the accident. (*Id.*) The policy at issue "provided coverage for liability, First Party Benefits . . . and uninsured/underinsured motorist coverage[.]" (*Id.*)

---

[1] In reaching its conclusion, the Court considered all of the materials currently before it and which it may properly consider when addressing a Fed. R. Civ. P. 12(b)(1) factual attack on jurisdiction, described in more detail below. Further, the Court will refer to "Interinsurance Exchange of the Automobile Club" as the singular "Defendant" for the remainder of this Opinion.

On May 1, 2019, Defendant AAA denied Mr. Amato's claims for medical benefits coverage, income loss coverage, and uninsured motorist coverage. (ECF Nos. 1 and 1-3.) Mr. Amato now sues to recover benefits under his policy as well as damages for alleged statutory bad faith and violations of Pennsylvania's Unfair Trade Practices Act and consumer protection laws. (*Id.*)

## II.   <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction over the plaintiff's claims. "At issue . . . is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). By contrast, a Rule 12(b)(6) motion "tests the legal sufficiency of plaintiff's claim. In other words . . . the question is whether the plaintiff would be able to prevail even if she were able to prove all of her allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The party asserting jurisdiction bears the burden of proving its claims are properly before the court. *Dev't Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

In reviewing a Rule 12(b)(1) motion, a court must determine whether the jurisdictional attack is facial or factual. *Petruska*, 462 F.3d at 302 n.3. A facial attack challenges the court's jurisdiction without disputing the averred facts in the complaint, thus requiring the court to treat all averments as true. *Id.* A factual attack, however, contests the factual allegations underlying a plaintiff's assertion of jurisdiction. *Const. Party of Pennsylvania. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When a factual challenge is made, the plaintiff's allegations receive no presumption of truthfulness, *Mortensen*, 549 F.2d at 891, and the court must "'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Mortensen*, 549 F.2d at 891). As part of its analysis, "the court may consider evidence outside the

pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). For example, a court may review facts, such as those presented in affidavits, outside the complaint to ascertain its jurisdiction to hear the case. *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (3d Cir. 1991).

Here, Defendant challenges whether Plaintiffs have satisfied the "jurisdictional prerequisites" to pursue this case in federal court, namely, whether Plaintiffs have established complete diversity and the amount in controversy required for the court to exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Defendant argues that its status as a reciprocal insurer means that it should be treated as an unincorporated association for the purpose of determining citizenship. (ECF No. 11.) In opposition, Plaintiffs argue that Defendant's citizenship should not be determined by its status as an unincorporated association, but rather, the Court should treat Defendant as a corporation for diversity jurisdiction analysis.

Accordingly, the Court will consider Defendant's Motion as a factual attack on the Court's subject matter jurisdiction. The Court may therefore "inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). Here, the Court considers Plaintiffs' Complaint and exhibits (ECF Nos. 1, 1-2, 1-3); Defendant's Motion and exhibits, including an affidavit submitted by an authorized representative of Defendant (ECF Nos. 10, 11, 11-1, 11-2); and all other briefing and exhibits submitted by the parties. (ECF Nos. 12; 13; 13-1–13-5; 14.)

## III.   DISCUSSION

Based on the Court's consideration of the Complaint, briefing, and all other materials it may properly consider, the Court frames the key issue before it as follows: whether, for purposes of invoking diversity jurisdiction pursuant to § 1332, the Court should treat Defendant, a reciprocal insurer, as an unincorporated association—whose citizenship is determined by the citizenship of

all its subscribers—or, whether the Court should treat Defendant as a corporation—whose citizenship is determined by (1) its principal place of business and (2) its place of incorporation. *See Wymard v. McCloskey & Co.*, 342 F.2d 495, 497 (3d Cir. 1965). For the reasons that follow, the Court concludes that Defendant is a reciprocal insurer and as such, the Court concludes that Defendant is an unincorporated association whose citizenship for purposes of diversity jurisdiction is determined by the citizenship of all of its subscribers. The Court summarizes the parties' arguments below.

Defendant contends that the Court should dismiss this case for want of subject matter jurisdiction because Plaintiffs have not raised any federal question invoking jurisdiction under 28 U.S.C. § 1331 nor have Plaintiffs established the requirements necessary to invoke diversity jurisdiction under 28 U.S.C. § 1332. Focusing primarily on its diversity jurisdiction argument, Defendant asserts first that "complete diversity amongst the parties is lacking," basing its argument on its legal status as a reciprocal insurer. (ECF No. 11.) As a "reciprocal insurer," Defendant maintains that it is an unincorporated association, meaning its citizenship "is determined by the citizenship of its subscribers." (*Id.*) Because Gary M. Amato and his family, as well as other subscribers to AAA, are citizens of the Commonwealth of Pennsylvania, Defendant argues that it is likewise "a citizen of Pennsylvania[,]" thus eliminating complete diversity between the parties. (*Id.*) Second, Defendant contends that even if the Court were to conclude complete diversity exists, the Plaintiffs' "amount in controversy does not exceed the jurisdictional threshold" because they have not "specifically allege[d] damages in excess of the seventy-five thousand dollars ($75,000.00) alleged to be owed under the Policy[,]" and have therefore not established the requisite sum needed under § 1332(a). (*Id.*)

Plaintiffs, in turn, argue that the (1) the parties are completely diverse because Defendant is a corporation as opposed to an unincorporated association, and (2) the amount in controversy as

alleged in their Complaint exceeds seventy five thousand dollars ($75,000.00). Under § 1332(a)(1)'s complete diversity prong, Plaintiffs contend that "[d]espite the great weight of authority in favor of a reciprocal insurance exchange's status as citizens of all states in which it has subscribers, recent opinions on the issue have warned reciprocal exchanges against strategic[] and self serving applications[.]" (ECF No. 13 (internal quotation marks omitted) (citing *McKenzie v. Farms Ins. Exch.*, No. 17-04011, 2018 WL 801597, at *4 (D.S.D. Feb. 7, 2018)).) In advancing this argument, Plaintiffs point to a suit allegedly brought against the same Defendant[2] in the U.S. District Court for the Eastern District of Pennsylvania, titled *Smith v. AAA Interinsurance Exchange of the Automobile Club*, in which Defendant, instead of challenging the federal court's jurisdiction, "admitted that [it was] subject to diversity jurisdiction." (*Id.* (quoting *Smith v. AAA Interinsurance Exchange of the Auto. Club,* No. 000768, 2020 WL 2193357, at *1 (E.D. Pa. May 6, 2020)).) Based on Defendant's admission in that case (ECF No. 13-5), Plaintiffs now argue that Defendant's inconsistent assertion of citizenship raises concern that Defendant is engaging in "selective invocation of federal jurisdiction," which is a "waste of its insureds['] time and resources as well as that of the courts[.]" (*Id.* (quoting *McKenzie*, 2018 WL 801597, at *13).)

## A. Citizenship of the Parties

First, the Court concludes that based on the record before it (*e.g.*, all relevant filings and materials the Court may properly consider, including the affidavit signed on behalf of AAA's authorized representative and both copies of the insurance policy proffered by Plaintiffs and Defendant) that Defendant is a reciprocal insurer. "A reciprocal insurance exchange . . . is an unincorporated business organization of a special character in which the participants, called

---

[2] The only named defendant in *Smith v. AAA Interinsurance Exchange of the Auto. Club,* No. 000768, 2020 WL 2193357, at *1 (E.D. Pa. May 6, 2020) is "AAA Interinsurance Exchange of the Automobile Club." While the Court has concluded that the only properly named Defendant here is "Interinsurance Exchange of the Automobile Club" and not "AAA Interinsurance Exchange of the Automobile Club," the purpose for which Plaintiffs cite this case is still relevant and readily distinguishable (*i.e.*, to support its argument that Defendant is engaged in selective invocation of federal jurisdiction). As the Court discusses in more detail below, this argument does not impact the Court's analysis of subject matter jurisdiction.

subscribers . . . are both insurers and insureds." *Themis Lodging Corp. v. Erie Ins. Exch.*, No. 10-00003, 2010 WL 2817251, at *1 (N.D. Ohio July 16, 2010) (internal quotation marks omitted) (quoting *Adolph Coors Co., et al. v. Truck Ins. Exch.*, No. 04-02150, 2005 WL 486580, at *2 n.1 (D.D.C. Feb. 28, 2005)). "Courts have long recognized that reciprocal exchange insurance associations . . . do not receive fictional citizenship as do corporations but, instead, bear the citizenship of each member." *Erie Ins. Exch. v. Research Prods. Corp.*, No. 15-00240, 2016 WL 1238811, at *1 (W.D. Pa. Mar. 30, 2016) (quoting *Themis Lodging Corp.*, 2010 WL 2817251, at *1) (citing *Brown v. Farmers Ins. Co.*, No. 06-13693, 2007 WL 496669, at *3 (E.D. Mich. Feb. 13, 2007); *Florida Hosp. Trust Fund v. Comm'r of Internal Rev.*, 71 F.3d 808, 812 (11th Cir. 1996); *Baer v. United Serv. Auto. Ass'n*, 503 F.2d 393, 396 (2d Cir. 1974))); *see Arbuthnot v. State Auto. Ins. Ass'n*, 264 F.2d 260, 260 (10th Cir. 1959) (holding that the citizenship of interinsurance exchanges is not determined according to corporation citizenship principles). In this Circuit, "[t]here is no dispute among the courts . . . that policyholders in a reciprocal insurance exchange are its members." *Erie Ins. Exch. v. Midea America Corp.*, No. 16-01037, 2016 WL 6948288, at *2 (M.D. Pa. Nov. 28, 2016) (citing several cases from district courts in the Third Circuit).

Here, the record reflects that Defendant is a "reciprocal insurer organized under the laws of the state of California," which is supported by exhibits entered into the record by both Defendant and Plaintiffs (ECF Nos. 11-2 and 13-4).[3] *See also Lee v. Interinsurance Exch. of Auto. Club of Southern California*, 57 Cal. Rptr. 2d 798, 801–02 (Ct. App. 1996) (defining the legal status of the

---

[3] As support for its argument that Defendant is a corporation, Plaintiffs offer into the record Defendant's company profile data compiled by the California Department of Insurance as well as the Pennsylvania Insurance Department. (ECF Nos. 13-3 and 13-4.) These exhibits, while indicating that Defendant is organized under the laws of California, do not indicate that the company was "incorporated" under the laws of any state and further, ECF No. 13-4 expressly identifies Defendant as a reciprocal or interinsurance exchange provider. (ECF No. 13-4, at 3.) In the Court's estimation of the record before it, the evidence weighs in favor of this Court's finding that Defendant is a reciprocal insurer.

defendant, "Interinsurance Exchange of the Automobile Club of Southern California,"—the same entity in the current action before this Court—as a "reciprocal insurer . . . . organized under chapter 3 ["Reciprocal Insurers"] of Division 1, Part 2 of the [California] Insurance Code"). The record further reflects that Defendant has the following attributes of a reciprocal insurer, namely, that Defendant has "subscribers that are citizens of the Commonwealth of Pennsylvania" (ECF No. 11-2), as opposed to "customers," which is a legally significant choice of terminology indicative of a reciprocal insurer's structure. *See Nevada Capital Ins. Co. v. Farmers Ins. Exch.*, No. 12-02166, 2014 WL 6882342, at * 2 (D. Nev. Dec. 4, 2014) (explaining the differences between a consumer's rights as a "subscriber" to a reciprocal insurer pursuant to the California Insurance Code versus a "customer," who simply purchases insurance without becoming a member of an exchange or the like).

Additionally, Defendant has a named "corporate attorney-in-fact[.]"[4] *See Report of Examination of the Interinsurance Exchange of the Automobile Club as of December 31, 2015*, http://www.insurance.ca.gov/0250-insurers/0300-insurers/0400-reports-examination/upload/ INTERINSURANCE-AAA-2015examreport.pdf; *see also Nevada Capital Ins. Co.*, 2014 WL 6882342, at * 2 (relying, in part, on California's Insurance Code, which describes "a reciprocal insurance exchange as persons, called subscribers, exchanging reciprocal insurance contracts with each other and operating through an *attorney-in-fact*[,]" to reach its conclusion that the defendant was a reciprocal insurer (emphasis added)).

Concluding that Defendant is a reciprocal insurer, the prevailing rule, as Defendant argues in its Motion and as Plaintiffs note in their Opposition, counsels this Court to determine a

---

[4] The Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Civ. P. 201(b)(2), (c)(1). Here, Plaintiffs entered Defendant's company profile data, compiled by the California Department of Insurance, into the record. In analyzing Defendant's attributes for purposes of determining whether it is a reciprocal insurer, the Court can and does take  judicial notice of Defendant's internal structure from additional similar data compiled by the California Department of Insurance, specifically an Examination Report submitted to that Department's Commissioner.

reciprocal insurer's citizenship for purposes of diversity jurisdiction by the citizenship of its subscribers. The Court is unpersuaded by Plaintiffs' argument that it should instead conclude that Defendant is a corporation for diversity jurisdiction purposes. In *McKenzie v. Farmers Insurance Exchange*, the U.S. District Court for the District of South Dakota case that Plaintiffs rely on to make this argument, the court emphasized that it was troubled by the insurer-defendant's track record that seemed to tell a story of a "self-serving" strategy—whereby the defendant argued opposing views of diversity jurisdiction in different cases within the same court. *See* 2018 WL 801597, at *4. However, the court in *McKenzie* ultimately concluded that at the end of the day, it could not exercise jurisdiction it did not have. *Id*. Likewise here, the Court cannot ignore the great weight of authority—indicating that a reciprocal insurer's citizenship is determined by the citizenship of its subscribers—and open the federal court's doors to a case or controversy in which complete diversity between the parties clearly does not exist.[5]

---

[5] Further, the assertion of the absence of subject matter jurisdiction cannot be forfeited or waived, nor can such jurisdiction be created by the agreement or stipulation of a party. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Plaintiffs' argument that Defendant's alleged alternative litigation strategy, *i.e.*, its inconsistent admission of diversity jurisdiction in the Eastern District of Pennsylvania, should foreclose Defendant's ability in this case to assert its status as an unincorporated association may be a noteworthy observation. However, the argument does not change this Court's inquiry, and its duty as a court of limited jurisdiction, to examine whether subject matter jurisdiction exists. To put a finer point on it, this Court either does, or does not, have subject matter jurisdiction, no matter the position of Defendant. *See Wright v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000) ("The bottom line is that irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." (internal citation omitted)); *see also Commonwealth of Pennsylvania Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 729 F. Supp.1518, 1522 (1990), *aff'd* 915 F.2d 1559 (3d Cir. 1990) (concluding that "estoppel cannot be employed to prevent [the defendant's] challenge to subject matter jurisdiction, even though [the defendant] now contradicts the label it employed at the administrative level"); *Wright*, 219 F.3d at 89 ("Special care should be taken in considering whether judicial estoppel should even apply to matters affecting federal subject matter jurisdiction." (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure § 4477*, at 784 (1981) (citing *In re Southwestern Bell Tell Co.*, 535 F.2d 859, 861, *aff'd en banc*, 542 F.2d 297 (5th Cir. 1976), *rev'd on other grounds sub nom. Gravitt v. Sw. Bell Tel. Co.*, 430 U.S. 723 (1977))). That being the case, the real issue for Defendant will arise in a case in which it seeks to take the position that it is not a reciprocal insurer and that federal subject matter jurisdiction would "stick." In that situation, it may not have the luxury of taking that position. *See Selected Risks Ins. Co. v. Kobelinski*, 421 F. Supp. 431, 434 (E.D. Pa. 1976) (holding that the defendant was judicially estopped from asserting the existence of subject matter jurisdiction where in a former action, it argued "that the Court lacked jurisdiction").

The statute that grants federal diversity jurisdiction expressly requires that the plaintiff and defendant to an action be "citizens of different states." 28 U.S.C. § 1332(a). Here, Plaintiff Gary Amato is a subscriber to AAA, as evidenced by the exhibit to Defendants' Motion to Dismiss (ECF No. 11-1) and the affidavit entered into the record on behalf of AAA (ECF No. 11-2), as well as Mr. Amato's own insurance policy offered as an exhibit to the Complaint. (ECF No. 1-2.) Gary Amato and the other Plaintiffs are domiciled in Pennsylvania (ECF No. 1), and therefore, he is a citizen of Pennsylvania for diversity jurisdiction purposes. Mr. Amato is a subscriber to Defendant's insurance exchange. (ECF Nos. 1, 1-2, 11-1, 11-2.) As noted above, a reciprocal insurer's citizenship for purposes of diversity jurisdiction is based on the domicile of each of its subscribers. As such, Plaintiffs and Defendant are both citizens of Pennsylvania. Accordingly, complete diversity between Plaintiffs and Defendant does not exist, and the Court may not exercise its jurisdiction over the case pursuant to 28 U.S.C. § 1332.[6]

### B.  Amount in Controversy

Because the parties here are not completely diverse, the issue of whether Plaintiffs have sufficiently alleged the amount in controversy required under § 1332(a) is not necessary for the decision here. Nonetheless, the Court concludes that Plaintiffs have satisfied this requirement. Courts "accept a party's good faith allegation of the amount in controversy;" however, when a defendant then challenges a plaintiff's allegations of the amount in controversy, the plaintiff must provide "sufficient evidence" to demonstrate the amount in controversy exceeds $75,000. *Columbia Cas Transmission v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995)). "The plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938))). And, a court will only dismiss

---

[6] Additionally, no federal question has been raised in this case, so the Court may not exercise jurisdiction pursuant to § 1331 either.

the case for failure to sufficiently allege the amount in controversy requirement if "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Tarbuck*, 62 F.3d at 541 (internal quotation marks omitted) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89).

Based on Plaintiffs' Complaint and the damages sought pursuant to Plaintiffs' insurance policy as well its alleged claims brought for statutory bad faith, unfair trade practices, and violations of consumer protection laws, the Court cannot conclude "to a legal certainty" that Plaintiffs cannot recover an amount that exceeds the seventy five thousand dollar ($75,000.00) requirement. (ECF No. 1.) Further, the amount sought by Plaintiffs, as alleged in the Complaint (averred to be more than seventy five thousand ($75,000.00) dollars), appears to the Court to be sufficiently in "good faith," which the Court must accept. *Owens*, 574 U.S. at 87.

## IV.   CONCLUSION

Based on the well-established principles outlined above, the Court may not exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 1332 or 28 U.S.C. § 1331, and thus, the Court does not have the power to hear Plaintiffs' claims. Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) (ECF No. 10) is **GRANTED**, and Plaintiffs' Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for want of subject matter jurisdiction.

An appropriate Order will be entered.

 s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: December 8, 2020
cc:    All counsel of record

11